# WHEATON DODGE CITY, INC. *v.* MICHAEL BALTES

[No. 1416, September Term, 1982.]

*Decided June 13, 1983.*

The cause was argued before LOWE and ALPERT, JJ., and FREDERICK A. THAYER III, Associate Judge of the Fourth Judicial Circuit, specially assigned.

*Elbert R. Shore* and *David P. Landau,* with whom were *John T. Bell, Frank S. Cornelius, Alfred L. Rehder, Walter I. Weinschenk* and *Bell, Cornelius & Shore* on the brief, for appellant.

*Charles S. Carroccio, Jr.,* with whom were *John P. Roth* and *Richard K. Alpern* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

A Montgomery County circuit court jury found that Michael Baltes had been damaged by $2500 from a

fraudulent misrepresentation by Wheaton Dodge City, Inc. that a used van sold to him was new. Appealing here, Wheaton contends that there was insufficient evidence to show misrepresentation because Baltes had failed to prove one or more of the elements of actionable fraud in such cases, as indicated in *Thomassen Lincoln-Merc. v. Goldbaum,* 45 Md. App. 297 (1980). Appellant errs in argument, however, in each of the four issues it raises by failing to distinguish the difference between evidentiary sufficiency and evidentiary weight. The former determination is whether there is any evidence, even inferential, from which a rational mind could conclude the desired result; the latter is a matter of persuading the rational mind to reach a desired result.

In the case before us, Mr. Baltes bought a van from Wheaton which abundant evidence indicated was represented as new. It had, however, been previously purchased by a Mr. Burroughs who had air conditioning added, assumed possession and temporary registration, drove it over 50 miles (which were not registered on a defective odometer), returned it for numerous repairs pursuant to the warranty book given him, then rescinded the sale. Mr. Baltes, who subsequently sought to purchase a new van from appellant, was sold the rejected Burroughs' van as new.

Appellant first claims that the statutory definition of a new vehicle in Md. Trans. Code Ann. § 11-138 —

" 'New vehicle' means a vehicle:

(1) The owner of which is a manufacturer, distributor, or licensed dealer, and

(2) That never has been used to destroy its newness or to convert it into or make it a used or secondhand vehicle, as these terms are commonly used or understood in trade or business." —

mandates a holding that the van was new because of the "plethora of testimony presented at the trial of the instant case that the statute is the only definition relied upon by experts in the automotive retails [sic] sales and service field." But appellant overlooks the simple fact that what is

"commonly used or understood in trade or business" depends upon the evidence produced, and that evidence may be believed, disbelieved, or weighed in the balance by a jury. Here, it is apparent that the jury simply did not believe appellant's "plethora" of testimony.

Appellant's next argument on the issue of new or not new seems to rely somehow upon the value of the van when purchased by Baltes vis-a-vis its value when sold to Burroughs.

> "The sales contracts for the two transactions show that the Burroughs sales price before taxes and tags was $5,962.86. The Baltes sales price was $7,978.45. However, Burroughs did not have a trade-in vehicle, as did Baltes, which, according to Mr. Cash, meant that the deal was negotiated on a cash basis with no trade. That negotiation was made on discount only.

> Baltes, on the other hand, had a trade allowance of his 1975 Pontiac Grand Prix. According to Mr. Cash a trade allowance is a combination of the trade itself plus the discount. Those two figures added together represent the total trade allowance.

> In this case Baltes' trade-in car was actually valued at $2,900.00 but he was given an additional discount of $1,849.55, making a total trade in allowance of $4,749.55 on a car actually worth $2,900.00.

> After Wheaton Dodge paid off the lien on the Grand Prix, the net allowance on the trade-in was $3,530.81 leaving a cash due of $4,898.06, less the $10.00 deposit Baltes paid.

> Therefore, in actuality, Baltes paid less than Burroughs for the van if the trade-in allowance is factored into the total sales price."

Although we fail to see the relevance of that argument, we cannot help but comment that our reaction is that Baltes was charged $2,000 more for the used van than Burroughs

had been charged before it was used, however the figures are juggled. This transaction may well have been placed by the jury in the credibility balance of the testimony by appellant's salesmen-agents (who professed no knowledge of the Burroughs' circumstances), and included among the circumstances from which it inferred an intent to defraud. The very fact that agents of the corporate appellant performed both transactions is sufficient to impute intent to defraud to appellant. *Embrey v. Holly,* 293 Md. 128, 136 (1982).

Sufficient evidence of the "materiality" of the representation to the transaction was apparent when appellee had testified that he would not have purchased the vehicle had he known of its used condition and return due to defects, one of which was never corrected. One seeking to purchase a new car has the obvious right to rely upon the representations of the salesman verbally and in the agreements, satisfying the buyer that he is not buying someone else's troubles, whether those troubles were encountered over a long or short period of time.

"New", like "chaste", is not a matter of degree, and once lost may only be referred to thereafter in the comparative sense, never again as an absolute. The subject of that adjective may be just-like-new or even just-as-good-as-new, but it can never again be new. Appellant's continued reference to the "newness" of the van fails to address the issue. The "newness" of the van was not at issue, nor was its comparative quality which, as appellant points out, was not questioned by appellee upon investigation of the vehicle prior to sale.

Finally, appellant complains that there was no proof of compensatory damages but argues that a Mr. Tellock, who had been a field claims specialist automobile insurance adjuster for over ten years (during which he evaluated a thousand automobiles) expressed his expert opinion that the use of the vehicle decreased its value by $500. Assuming the jury applied one of the "flexible" approaches to damages set forth in *Hinkle v. Rockville Motor Co.,* 262 Md. 502 (1971), cited by appellant, it could well have accepted that that loss,

coupled with a belief that the $2000 increase over the initial sales price of the van when new, justified a $2500.00 compensatory damage verdict.

This case is so clearly apposite to *Thomassen* that we wonder if the appeal costs were worth the risk, since all issues raised were sufficiency of the evidence questions and only evidentiary weight was argued. If appellant was concerned over the alleged "error in logic" it points to in *Thomassen*'s approval of an instruction that the statutory definition of a new vehicle is advisory, *i.e.,* "not necessarily controlling in a private action for fraud", *id.* at 310, we note, as we have before, that when applied in such actions the definition itself is anything but definitive. Whether a vehicle "has been used to destroy its newness or to convert it into or make it a used or second hand vehicle" is clearly a factual determination, not a legal one. The use or understanding of the terms in the trade or business is equally dependent upon testimony which may indeed conflict or simply be disbelieved as was obvious here. By the very language of the statutory definition, it must be advisory at best and being subject to extraneous proofs cannot be "controlling" in any legal sense of the word.

We might add that if appellant was so concerned about that holding in *Thomassen,* as instructed by the trial judge in this case, it did not point out in brief or extract that it objected to the instruction in order to preserve the issue for our review. If cases such as this concerning damages of hardly the costs of appeal are brought to us on principle, the principle should be preserved pursuant to appellate rules.

The only other purpose apparent or possible would seem to be an attempt to restrict *Thomassen* to its facts. Compared with this case: *Thomassen* showed clear knowledge of the previous sale by the dealer, as against inferable, imputed knowledge here; in *Thomassen* express representations as contrasted to implicit representations here; and, the added element of fire damage in *Thomassen* which has no real bearing on the new versus used issue except on the irrelevant question of comparison. In essence, the only real dis-

tinction between the two transactions is that in this case the misrepresentation was more subtle and thus commensurately less obvious. The distinction amounts to evidentiary quantity not necessarily its quality.

*Judgment affirmed.*
*Costs to be paid by appellants.*